UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| In re WILLIAM MATTHEW DUGO,<br><br>      Debtor.<br><br>―――――――――――――――<br>BANK OF STOCKTON,<br><br>      Appellant,<br><br>  v.<br><br>WILLIAM MATTHEW DUGO,<br><br>      Appellee. | CIV. NO. 2:15-1989 WBS<br><br>BANKR. ADVERSARY NO. 14-02152<br><br>BANKR. NO. 14-22435<br><br>OPINION |

----oo0oo----

Appellant Bank of Stockton (the "Bank"), a secured creditor, brought an adversary proceeding against appellee and debtor William Matthew Dugo, seeking a determination that the obligation Dugo owes it is nondischargeable. Presently before the court is the Bank's appeal from the bankruptcy court's

1

1  judgment and award of attorney fees in favor of Dugo.[1]  (Docket
2  No. 21.)
3  I.   Factual and Procedural Background
4          The Bank issued Dugo a loan and line of credit secured
5  by Dugo's livestock.  (Bank's Br. at 7 (Docket No. 21).)  Dugo
6  defaulted and the Bank unsuccessfully attempted to collect the
7  livestock collateral to pay down the line of credit.  (Id.)  On
8  March 11, 2014, Dugo filed a voluntary Chapter 7 bankruptcy
9  petition in the Eastern District of California bankruptcy court.
10  (Excerpts of Record ("ER") at 17, Adversary Compl. ¶ 7.)  The
11  Bank then filed an adversary proceeding alleging willful and
12  malicious injury, 11 U.S.C. § 523(a)(6), and extension, renewal,
13  or refinancing of credit obtained by use of a false statement in
14  writing, id. § 523(a)(2)(B), and requested a determination that
15  the debts owed by Dugo were nondischargeable.  (ER at 19, 29-39,
16  Adversary Compl. ¶¶ 9, 105-19, 120-27.)  The parties conducted
17  discovery, including production of documents and depositions.
18          On June 17, 2015, the bankruptcy court issued an order
19  setting trial for September 10, 2015 and stating that the
20  "Alternate Direct Testimony Procedure" under Eastern District of
21  California Bankruptcy Court Local Rule 9017-1 would apply to the
22  proceeding.  (ER at 81-82, Order Setting Trial.)  The purpose of
23  this procedure is "to streamline the adducement of direct
24  testimony in trials . . . so as to reduce trial time without
25  sacrificing due process and a fair trial."  E.D. Cal. Bankr. L.R.

---

[1] On April 29, 2016, this court ordered the Bank's appeals in civil case numbers 2:15-2539 and 2:15-1989 consolidated.  (Docket No. 20.)

2

1  9017-1(a)(1).  It requires the plaintiff to submit to opposing
2  counsel a declaration of the direct testimony of each witness,
3  executed under penalty of perjury, and the exhibits compromising
4  the plaintiff's case in chief fourteen days before trial.  Id.
5  L.R. 9017-1(b)(1).  The defendant must submit its declarations
6  and exhibits seven days before trial.  Id. L.R. 9017-1(b)(2).  If
7  a party fails to comply, "the court may issue appropriate
8  sanctions," including "exclusion of Direct Testimony Statement(s)
9  and the live direct testimony of the witness(es) giving such
10 statements, exhibits, or other evidence presented which were not
11 timely exchanged or presented, or such lesser sanction as
12 appropriate and reasonable."  Id. L.R. 9017-1(d).

13         After the Bank took Dugo's deposition on July 16, 2015,
14 the parties agreed to stipulate to a joint list of exhibits
15 before trial in order to avoid submitting foundational testimony
16 at trial.  (Bank's Br. at 9; Dugo's Br. at 4 (Docket No. 22).)
17 Dugo alleges, however, that the Bank's attorney promised to get
18 it a list of witnesses and exhibits well in advance of trial but
19 that no formal agreement was reached.  (Dugo's Br. at 4.)

20         Rather than submitting a proposed list of witnesses and
21 exhibits early, the Bank's counsel emailed Dugo on August 27,
22 2015--the day the declarations and exhibits were due under
23 Bankruptcy Rule 9017-1--indicating that he was attaching the
24 declarations but that they were "presently unsigned, as we
25 reserve the right to make changes as necessary."  (Id.; Dugo's
26 App. at 3 (Docket No. 22-1).)  The next day, Dugo informed the
27 Bank that it had failed to properly attach the declarations and
28 the Bank therefore sent a second email attaching the still-

3

1  unsigned declarations.  (Dugo's Br. at 5.)  The Bank alleges that
2  the declarations identified the exhibits the Bank intended to
3  rely on at trial, nearly all of which were documents produced
4  during discovery and to which Dugo had had access for months.
5  (Bank's Br. at 9.)  On September 3, 2015, in compliance with
6  Bankruptcy Rule 9017-1, Dugo provided signed declarations of
7  witnesses and exhibits to the Bank.  (Dugo's Br. at 5.)
8            On September 4, 2015, the Bank sent Dugo a proposed
9  stipulation of trial exhibits.  (Id.)  The Bank alleges that it
10 attempted to send this exhibit list on August 27, 2015 but it was
11 not sent due to "an apparent internal error."  (Bank's Br. at
12 10.)  Dugo did not agree to the stipulated list because it was
13 submitted after the Alternate Dispute Procedure deadline and the
14 exhibits were not attached to the list.  (Dugo's Br. at 5.)
15           On September 8, 2015, Dugo filed objections to the use
16 of the three unsigned declarations and the admission of the
17 Bank's exhibits.  (Id.)  That same day, Dugo received a disc from
18 the Bank with its seventy-six exhibits, consisting of
19 approximately 2,464 pages, and the three declarations signed
20 under penalty of perjury.  (Id. at 6.)
21           At the September 10, 2015 trial, the bankruptcy court
22 granted Dugo's motion to deny the introduction of the Bank's
23 exhibits and declarations.  (ER at 240-41, Tr. of Sept. 10, 2015
24 Proceedings.)  The bankruptcy court found that the Bank failed to
25 comply with Bankruptcy Rule 9017-1 despite having ample time to
26 submit signed declarations and exhibits and Dugo was prejudiced
27 by receiving such a "huge number of exhibits" only two days
28 before trial, preventing him from preparing his defense.  (Id. at

235-39.)  The bankruptcy court explained that the purpose of Bankruptcy Rule 9017-1 is for a plaintiff to present its case "to the other side so they have an opportunity to prepare their case for the Court."  (Id. at 239.)  The bankruptcy court judge further reasoned that because he is a part-time judge, he needs to proceed with his cases and does not have time for continuances.  (Id. at 240.)  The bankruptcy court denied the Bank's request for a continuance or any other lesser sanction.  (Id. at 241.)  As a result, the Bank did not have any evidence or testimony to present and the parties did not proceed to trial.  (Id.)  The bankruptcy court entered judgment in favor of Dugo, (id. at 241-42), and the Bank filed a timely appeal, (id. at 245, Notice of Appeal).

     Dugo then filed a motion for attorney's fees of $19,340, and the Bank moved for a stay pending its appeal.  (Dugo's Br. at 7; ER at 248-258, 288.)  The bankruptcy court denied the Bank's motion for a stay and awarded Dugo's attorney, Douglas Jacob, $15,000 as "partial reimbursement for the total [attorney's] fees incurred."  (ER at 355, Tr. of November 10, 2015 Hearing.)  The bankruptcy court explained that it was not making a "final order" because "[a]t the conclusion of the litigation in this matter the Court will make a final determination upon motion of the parties for the final resolution of attorney's fees."  (Id. at 354-56.)  The bank filed a timely appeal of this fee award.  (Id. at 359.)  On February 9, 2016, this court granted the Bank's motion for a stay of the attorney's fees award pending appeal.  (Feb. 9, 2016 Order at 6 (Docket No. 12).)

5

Presently before the court is the Bank's appeal of both the bankruptcy court's exclusion of its Alternate Direct Testimony declarations and exhibits, which led to final judgment in favor of Dugo, and its award of attorney's fees.

II. Discussion

This court has jurisdiction to hear the Bank's appeal pursuant to 28 U.S.C. § 158(a)(1). See 28 U.S.C. § 158(a)(1) ("The district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157."). Both the bankruptcy court's sanction excluding the Bank's evidence and award of attorney's fees are reviewed for an abuse of discretion. In re Reimers, Civ. No. 12-7848 ABC, 2013 WL 9994337, at *2 (C.D. Cal. Feb. 12, 2013) ("A court's imposition of sanctions is reviewed for an abuse of discretion, which means that it should not be reversed 'absent a definite and firm conviction that the district court made a clear error of judgment.'") (citation omitted); see also City of Long Beach v. Standard Oil Co. of Cal., 46 F.3d 929, 936 (9th Cir. 1995) ("A trial court's evidentiary rulings are reviewed for an abuse of discretion."); Labotest, Inc. v. Bonta, 297 F.3d 892, 894 (9th Cir. 2002) (stating that attorney's fee awards are reviewed for an abuse of discretion).

Under the two-part "abuse of discretion" or "clearly erroneous" test, the reviewing court must first "determine de novo whether the trial court identified the correct legal rule to apply to the relief requested." United States v. Hinkson, 585

F.3d 1247, 1261-62 (9th Cir. 2009).  If it did not, the reviewing court must conclude the trial court abused its discretion.  Id. at 1262.  If the trial court identified the correct legal rule, the reviewing court must determine "whether the trial court's application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record."  Id. (citation and internal quotation marks omitted).  "If any of these three apply," the trial court "abused its discretion by making a clearly erroneous finding of fact."  Id.  The reviewing court cannot look to what it would have done had it been in the trial court's place but rather must determine "whether the trial court reached a decision that falls within any of the permissible choices the court could have made."  Id. at 1261.

    The Bank argues that the bankruptcy court's exclusion of the declarations and exhibits was tantamount to a terminating sanction for a discovery violation and that the bankruptcy court failed to consider important factors for imposing such a severe sanction.

    For example, Federal Rule of Civil Procedure 37(c)(1) permits the court to enter sanctions against parties who fail to make required disclosures or to cooperate during discovery.  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Alternatively, "instead of this sanction, the court, on motion

7

and after giving an opportunity to be heard" may order payment of reasonable expenses caused by the failure, inform the jury of the party's failure, or "impose other appropriate sanctions." Id. This is a "'a self-executing, automatic sanction to provide a strong inducement for disclosure of material.'" Hoffman v. Constr. Protective Servs., 541 F.3d 1175, 1180 (9th Cir. 2008). "Under this circuit's law," however, if "the sanction amounted to dismissal of a claim, the district court was required to consider whether the claimed noncompliance involved willfulness, fault, or bad faith, and also to consider the availability of lesser sanctions." R & R Sails, Inc. v. Ins. Co. of Pa., 673 F.3d 1240, 1247 (9th Cir. 2012); see also Henry v. Gill Indus., Inc., 983 F.2d 943, 946 (9th Cir. 1993) ("Where the drastic sanctions of dismissal or default are imposed, however, the range of discretion is narrowed and the losing party's non-compliance must be due to willfulness, fault, or bad faith." (citation omitted)).

Similarly, the Ninth Circuit has found that before imposing the "severe remedy" of dismissal with prejudice for violations of other pre-trial procedures mandated by local rules and court orders, the district court must find "willfulness, bad faith, and fault." Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills, 482 F.3d 1091, 1096 (9th Cir. 2007). The Ninth Circuit has defined "willfulness, bad faith, or fault" as meaning "disobedient conduct not shown to be outside the control of the litigant." Fjelstad v. Am. Honda Motor Co., Inc., 762 F.2d 1334, 1341 (9th Cir. 1985). In addition to finding bad faith or willfulness, the court must also weigh: "(1) the public's interest in expeditious resolution of litigation; (2) the court's

1   need to manage its docket; (3) the risk of prejudice to the
2   [party seeking sanctions]; (4) the public policy favoring
3   disposition of cases on their merits and (5) the availability of
4   less drastic sanctions." Thompson v. Housing Auth. of City of
5   Los Angeles, 782 F.2d 829, 831 (9th Cir. 1986).  "The sub-parts
6   of the fifth factor are whether the court has considered lesser
7   sanctions, whether it tried them, and whether it warned the
8   recalcitrant party about the possibility of case-dispositive
9   sanctions." Conn. Gen. Life Ins. Co., 482 F.3d at 1096.  What is
10  most critical for case-terminating sanctions is determining
11  "whether the discovery violations threaten to interfere with the
12  rightful decision of the case." Id. at 1097 (citation and
13  internal quotation marks omitted); see also Zambrano v. City of
14  Tustin, 885 F.2d 1473, 1480 (9th Cir. 1989) (finding that before
15  imposing monetary sanctions on an attorney for violation of a
16  local rule, the trial court must find that the attorney's
17  flouting of court rules was reckless, grossly negligent,
18  repeated, or willful and must "consider the usefulness of more
19  moderate penalties").

20          Sanctions for failing to timely submit declarations and
21  exhibits under Bankruptcy Rule 9017-1 are analogous to discovery
22  sanctions for failure to disclose documents or comply with pre-
23  trial orders.  As with the case or claim-terminating sanctions
24  discussed above, it follows that a bankruptcy court must consider
25  whether the claimed noncompliance involved willfulness, fault, or
26  bad faith and the availability of less severe sanctions before
27  imposing sanctions for violations of Bankruptcy Rule 9017-1 that
28  effectively terminate the adversary proceeding.

1    For example, in In re Sutton, BAP No. EC-14-1204, 2015 WL 7776658, at *1 (B.A.P. 9th Cir. Dec. 3, 2015), an adversary case involving the same bankruptcy judge, the plaintiffs violated Bankruptcy Rule 9017-1 by submitting their Alternate Direct Testimony declarations and exhibits only seven days prior to trial.  Id. at *2-4.  The plaintiffs claimed they had difficulty obtaining the signed declarations from the declarants because they lived far away or were traveling and hard to track down. Id. at *4.  The bankruptcy court concluded that the plaintiffs' failure to comply with Bankruptcy Rule 9017-1 caused extreme prejudice to the debtor in his trial preparation, granted the debtor's motion in limine to exclude the evidence, and entered judgment in favor of the debtor.  Id. at *4-5.  On appeal, the Bankruptcy Appellate Panel of the Ninth Circuit ("B.A.P.") found that the bankruptcy court's exclusion of the plaintiffs' declarations and exhibits was "analogous to sanctions under Civil Rule 37(c)(1)" and "amounted to the dismissal of Plaintiffs' fraud claims based upon their failure to comply with" Bankruptcy Rule 9017-1.  Id. at *6.

   B.A.P. concluded that the bankruptcy court's case-terminating sanction was an abuse of discretion because the court failed to make a finding of bad faith, willfulness, or fault and did not consider a more moderate penalty, such as continuing the trial to allow the debtor's attorney more time to prepare or a monetary sanction to compensate the debtor's attorney for an unnecessary appearance.  Id. at *7-9.  The bankruptcy court also did not consider the "strong public policy favoring disposition of cases on their merits."  Id. at *10.  Lastly, B.A.P. concluded

1   that the delay did not cause significant prejudice to the debtor
2   because the Alternative Direct Testimony exhibits and
3   declarations were substantially similar in substance to the
4   plaintiffs' summary judgment declarations and the debtor
5   therefore "had a good understanding as to what the ADT testimony
6   was regarding" months prior to the trial.  Id.  The debtor also
7   had the declarations and exhibits a full seven days before trial.
8   Id.  While this court is not bound by a B.A.P. decision, it finds
9   the reasoning of In re Sutton on point and persuasive.  See In re
10  Silverman, 616 F.3d 1001, 1005 (9th Cir. 2010) ("[W]e treat the
11  BAP's decisions as persuasive authority given its special
12  expertise in bankruptcy issues and to promote uniformity of
13  bankruptcy law throughout the Ninth Circuit.").

14          Similarly, in In re Reimers, Civ. No. 12-7847 ABC, 2013
15  WL 9994337 (C.D. Cal. Feb. 12, 2013), the bankruptcy court
16  excluded the plaintiff's testimony because she failed to comply
17  with the local rule requiring her to submit testimony through
18  declarations and to present contested exhibits through the
19  declarations by a certain deadline.  Id. at *1.  As a result, the
20  plaintiff had no evidence to present at trial and the bankruptcy
21  court entered judgment in favor of the debtors.  Id.  The Central
22  District of California found that this exclusion was tantamount
23  to a terminating sanction and that the bankruptcy court abused
24  its discretion by considering only the public's interest in
25  expeditious resolution of litigation and the court's need to
26  manage its docket without considering that the plaintiff made a
27  good faith mistake or the possibility of less drastic measures.
28  Id. at *2.  The court noted that the plaintiff had already

1  presented all of her evidence in her trial brief, deposition, and
2  during discovery and the debtors would not have been prejudiced
3  by a short continuance.  Id. at *3.
4         In the present case, just as in Sutton and Reimers, the
5  bankruptcy court imposed what was essentially a case-terminating
6  sanction by excluding the Bank's exhibits and declarations and
7  thereby preventing the Bank from presenting its case in chief.
8  While the facts here are not identical to those in Sutton and
9  Reimers, the present case is similar in that the record does not
10 show that the bankruptcy court made findings as to the
11 willfulness, fault, or bad faith of the Bank's noncompliance or
12 weighed the availability of lesser sanctions and other relevant
13 factors before imposing such a sanction.
14         For example, the bankruptcy court concluded that the
15 Bank's late-filing prejudiced Dugo because he had insufficient
16 time to review the "voluminous documents" submitted and to
17 prepare his defense.  (ER at 237-41.)  The Bank, however,
18 contends that Dugo was not significantly prejudiced because,
19 while unsigned, the declarations it submitted to Dugo thirteen
20 days prior to trial were identical in substance to the signed
21 declarations submitted two days prior to trial and put Dugo on
22 notice of the exhibits on which the witnesses planned to rely.
23 (Bank's Br. at 23.)  Further, the Bank argues Dugo was not
24 prejudiced because he received the majority of the exhibits
25 months before trial during discovery and had the complete set of
26 exhibits two days prior to trial.  (Id. at 9.)  It is not clear
27 from the record that the bankruptcy court weighed or even
28 considered those arguments.  This court therefore cannot conclude

12

that the bankruptcy court's finding of prejudice was supported by "inferences . . . drawn from the facts in the record." Hinkson, 585 F.3d at 1261-62.

Furthermore, the record does not demonstrate that the bankruptcy court considered whether any possible prejudice could have been cured by a less severe sanction, such as a continuance and monetary compensation to Dugo for the delay. The bankruptcy court judge explained only that he is "a part-time judge . . . When I'm here, I want the case to proceed. I don't want it continued . . . because I don't have that much time." (Id. at 239-40.) While the efficient management of the court's docket is a legitimate concern, this should not be the primary or sole consideration in denying a request for a lesser sanction.

In addition, the bankruptcy court made no finding as to whether the Bank acted willfully, intentionally, or in bad faith. The Bank contends that it inadvertently submitted its declarations and exhibits late because of a misunderstanding about how the parties would submit a stipulated exhibit list, technological error, and inadequate staffing. (Bank's Br. at 22.) In contrast, Dugo argues that the Bank was well aware that Bankruptcy Rule 9017-1 required declarations to be signed under penalty of perjury yet intentionally submitted unsigned declarations and did not provide its exhibits until shortly before trial. (Dugo's Br. at 15.) There is no record that the bankruptcy court weighed these two versions of events and concluded that the Bank's delay was more than mere negligence, as it was required to do. See In Re Sutton, 2015 WL 7776658, at *10 ("[M]ere negligence without more is an insufficient ground for

1  imposing case-terminating sanctions." (citing Zambrano, 885 F.2d
2  at 1480)).
3        The bankruptcy court therefore failed to consider,
4  weigh, and make findings on the relevant factors for imposing a
5  case-terminating sanction.  Instead, the bankruptcy judge appears
6  to have assumed that Dugo was prejudiced by the Bank's non-
7  compliance, failed to weigh lesser available sanctions, and made
8  no finding on the Bank's willfulness, bad faith, or fault.
9  Rather than disposing of the case on the merits, the bankruptcy
10 court elected to enter judgment in favor of Dugo on a procedural
11 technicality.  Accordingly, the court must find that the
12 bankruptcy court abused its discretion and remand this matter to
13 the bankruptcy court.
14       Because the court is reversing the bankruptcy court's
15 order excluding the Bank's declarations and exhibits and its
16 judgment in favor of Dugo, the court must also vacate the
17 bankruptcy court's award of attorney's fees to Dugo as the
18 prevailing party.  (See ER at 355-56, Tr. of November 10, 2015
19 Hearing.)
20       The judgment of the bankruptcy court in favor of Dugo
21 is therefore REVERSED; the award of attorney's fees is VACATED;
22 and this matter is REMANDED to the bankruptcy court for further
23 proceedings consistent with this Order.
24       IT IS SO ORDERED.
25 **Dated:  August 2, 2016**

                                    WILLIAM B. SHUBB
                                    UNITED STATES DISTRICT JUDGE

14